UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMART AUTHENTICATION IP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ELECTRONIC ARTS INC.,<br><br>Defendant. | Case No. 19-cv-01994-SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 21 |

Before the Court is a motion to dismiss brought by defendant Electronic Arts Inc. ("EA"), which seeks a finding that U.S. Patent No. 8,082,213 (the "'213 patent") is invalid and patent-ineligible under 35 U.S.C. § 101. Dkt. No. 21 (Motion to Dismiss). This matter came on for hearing on August 9, 2019. Having read the papers and heard the parties' arguments the Court hereby GRANTS defendant's motion, finding the '213 patent invalid under § 101 and dismisses the complaint with prejudice.

**BACKGROUND**

On December 20, 2011, the '213 patent, entitled "Method and System for Personalized Online Security," was duly and lawfully issued by the U.S. Patent and Trademark Office. Compl. ¶ 7. Plaintiff, Smart Authentication, is the assignee and owner of the right, title and interest in and to the '213 patent. Compl. ¶ 8. The inventions of the '213 patent generally relate to methods and systems for multi-factor authentication of users over multiple communications media. Compl. ¶ 9. The '213's patent abstract states:

> Various embodiments of the present invention provide strong authentication of users on behalf of commercial entities and other parties to electronic transactions. In these embodiments of the present invention, a user interacts with an authentication service provider ["ASP"] to establish policies for subsequent authentication of the user. Thus, in these embodiments of the present invention, a user controls the level and complexity of authentication processes carried out by the authentication service provider on behalf of both the user and commercial entities and other entities seeking to authenticate the user in the course of conducting electronic transactions, electronic dialogues, and other interactions for which user authentication is needed. The policies specified by a user may include specification of variable-factor authentication, in which the user, during the course of an authentication, provides both secret information as well as evidence of control of a tangible object.

Dkt. No. 25-2 at 16 ('213 Patent).[1] Figure 3 of the '213 patent provides a helpful illustration of one of the patent's potential uses. Specifically, it models an interaction between a user, an ASP client, and an ASP. *Id*. at 5.



Figure 3

---
[1] For ease of reference, page citations to docket entries will refer to the ECF assigned page number in the upper right hand corner of each page.

The '213 patent contemplates a user trying to login to the user's account on a website, for example. In order to strengthen the security of the user's login credentials and protect the user's information, the user could be prompted to select an alternative form of authorization confirmation. The user could select to confirm her authorization via a secondary medium, including, but not limited to, a text message on her cell phone or an email. The secondary authenticating medium would occur outside the purview of the initial login credentials. This second form of authentication confirms the user's identity.

Prior to filing the instant action, Smart Authentication was engaged in proceedings before the Patent Trial and Appeal Board. Claim 11 emerged as the sole remaining claim following an *inter partes* review (IPR). Dkt. No. 21 at 10, Footnote 2 (Motion to Dismiss); see also Dkt. Nos. 25-3 and 25-4 (Decision on Appeal and Final Written Decision, respectively, attached to the Shekhar Vyas Declaration in Support of Opposition). Claim 11 is dependent upon claims 1, 9, and 10 (all of which were invalidated in the IPR). The relevant claims read:

> 1. A user-authentication service implemented as routines that execute one or more computer systems interconnected by two or more communications media with both an authentication-service client, and a user, the user-authentication service comprising:
>
> the one or more computer systems;
>
> stored user-authentication policies specified by the user;
>
> stored user information;
>
> account interface routines that implement an account interface by which the user specifies, modifies, adds, and deletes user-authentication policies; and
>
> authentication-interface routines that implement an authentication interface by which, following initiation of a transaction by the user with the authentication service client, the authentication-service client submits an authentication request, through the first communications medium or through a second communications medium, to authenticate the user, the authentication interface routines employing a variable-factor authentication, when specified to do so by stored user-authentication policies, to authenticate the user on behalf of the authentication-service client during which the user communicates with the user-authentication service through a third communications medium different from the first and second communications media and a user device different from that employed by the user to initiate the transaction with the authentication-service client.
>
> 9. The user-authentication service of claim 1 wherein a user-authentication policy specifies one or more of: constraints and parameters associated with user-

3

authentication processes carried out by the user-authentication service on behalf of one or more, specified authentication-service clients.

10. The user-authentication service of claim 9 wherein constraints include one or more of:

geographical constraints;

time-of-day constraints;

date constraints;

communications -medium-related constraints;

user-authentication service actions; and

event constraints.

11. The user-authentication service of claim 10 wherein user-authentication service actions include one or more of:

halting authorization service after detecting a specified event;

employing particular types of user-authentication procedures; and

providing alerts upon detecting specified events.

Dkt. No. 25-2 at 16-17 ('213 Patent).

Plaintiff's complaint, filed in April 2019, alleges a single cause of action for direct infringement against defendant EA. Specifically, plaintiff alleges:

> Without license or authorization and in violation of 35 U.S.C. § 271(a), Defendant is liable for infringement of claim 11 of the '213 patent by making, using, importing, offering for sale, selling and/or hosting a method for authenticating a user that requires two-factor authentication, including, but not limited to Login Verification, because each and every element is met either literally or equivalently.

Compl. ¶ 16.

## LEGAL STANDARD

### I. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted

4

unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

To state a claim for patent infringement, "a patentee need only plead facts sufficient to place the alleged infringer on notice. This requirement ensures that the accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself." *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000). The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016).

## II. Subject Matter Eligibility Under § 101

Under 35 U.S.C. § 101, the scope of patentable subject matter encompasses "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010) (quoting 35 U.S.C. § 101). Section 101 "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). They are not patent-eligible because "they are the basic tools of scientific and technological work," which are "free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012) (citations omitted). The United States Supreme Court has explained that allowing patents for such purported inventions "might tend to impede innovation more than it would tend to promote it[,]" thereby thwarting the primary objective of patent laws. *Id*.

*Alice* provides the relevant analytical framework for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. First, the court must determine whether the claims at issue are directed to one of the patent-ineligible concepts. *Id*. Second, if the claims are directed to a patent-ineligible concept, such as an abstract idea, the court must "consider the elements of each

5

claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id*. (citation and quotation marks omitted). Step two is often described "as a search for an 'inventive concept[.]'" *Id*. at 217-18. "When viewing claim elements individually, the court must remember that recitation of conventional, routine, or well-understood activity will not save an abstract claim." *California Inst. of Tech. v. Hughes Commc'ns, Inc*., 59 F. Supp. 3d 974, 980 (citing *Alice*, 573 U.S. at 223). However, "[w]hen viewing claim elements as an ordered combination, the court should not ignore the presence of any element, even if the element, viewed separately, is abstract." *Id*. "If the ordered combination of elements constitutes conventional activity, the claim is not patentable, but courts should remember that a series of conventional elements may together form an unconventional, patentable combination." *Id*.

The Federal Circuit has recently held that "[w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). However, the *Berkheimer* court also clarified that "[n]othing in this decision should be viewed as casting doubt on the propriety of those cases" resolving § 101 inquiries on motions to dismiss or summary judgment, where there is no genuine dispute over the underlying material facts. *Id*. "When there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field, this issue can be decided . . . as a matter of law." *Id*. "To the extent that the Court must resolve underlying questions of fact related to eligibility, they must be proven by clear and convincing evidence." *Broadband iTV, Inc. v. Oceanic Time Warner Cable, LLC*, 135 F. Supp. 3d 1175, 1188 (D. Haw. 2015), *aff'd sub nom. Broadband iTV, Inc. v. Hawaiian Telcom, Inc*., 669 F. App'x 555 (Fed. Cir. 2016) (citations omitted).

## DISCUSSION

EA requests the Court dismiss this action, arguing that claim 11, the only claim that survived the '213 patent IPR proceeding, claims patent-ineligible subject matter. Specifically, EA argues claim 11 of the '213 patent is directed to an abstract idea that lacks an inventive concept.

Plaintiff opposes defendant's motion on three grounds, namely: (1) unresolved issues of claim construction and underlying factual disputes preclude summary disposition; (2) claim 11 of the '213 patent is not abstract because "[i]t is directed to a computer-centric problem of reliable authentication of remote users involved in electronic transactions to improve network security," and solves problems associated with the prior art; and (3) claim 11 "reflects an inventive concept, as it provides a specific technological *way* to improve network security by reliably authenticating remote users involved in electronic transactions," and discloses "a specific, inventive combination of elements to address known problems in prior art authentication systems." Dkt. No. 25 at 5 (Opposition) ( bolding in original).

The parties' arguments are discussed in turn below.

## I. No Issues of Fact Preclude Summary Determination of Eligibility

Plaintiff argues the following issues of fact preclude summary determination: (1) paragraphs 9-12 of the complaint (Dkt. No. 25 at 11 (Opposition)); (2) the '213 patent's specification, explaining the shortcomings of prior authentication systems and how the alleged non-conventional arrangement of the claimed invention solves these problems (Dkt. No. 25 at 10 (Opposition)); and (3) claim construction (*Id*.). During the August 9, 2019 oral argument, when asked what, if any, factual disputes existed precluding summary determination of eligibility, plaintiff again cited paragraphs 9-12 of the complaint and stated claim construction would create issues of fact. Transcript of August 9, 2019 Hearing at 8:16-25. The Court disagrees.

First, paragraphs 9-12 of the complaint merely summarize the '213 patent's functionality, stating in total:

> 9. The inventions of the '213 patent generally relate to methods and systems for multi-factor authentication of users over multiple communications mediums.
>
> 10. The '213 patent discloses an Authentication Service Provider ("ASP"), which "is generally implemented above a software and hardware platform or platforms . . . that include operating systems, lower-level applications, and computer-server hardware." Ex. A at col. 4, ll. 13-16. "In many embodiments, the ASP . . . is a software implemented service that runs on one or more computer systems interconnected by various communications media with both ASP clients and users." *Id*. at col. 2, ll. 47-50. In certain embodiments, the "ASP may interact with the user via two different

communications media, such as a combination of the Internet and a cell phone." *Id*. at col. 3, ll. 23-25.

11. In another example of disclosed embodiments, "[t]he [] third interface 208 allows the ASP to interface with user devices through alternative communications media, such as a cell phone, fax machine, telephone, or other communications devices. The third interface 208 allows the ASP to interface with virtually any network enabled resource through an appropriate medium, including both physical devices such as a cell phone, fax machine, telephone, or other communications devices, and also soft devices, such as an instant messaging account, or an email account." *Id*. at col. 3, ll. 37-46.

12. As one example of the asserted claim, the **'213 patent recites a novel method** of providing a user-authentication policy that specifies constraints associated with user authentication processes carried out by the user authentication service. The constraints include different user-authentication service actions, such as 1) halting authorization service after detecting a specified event; 2) employing particular types of user-authentication procedures; or 3) providing alerts upon detecting specified events. (bolding added)

The closest any language in paragraphs 9-12 comes to raising an issue of fact is the bolded language in paragraph 12 above. But this is not enough. Although the Court must take the allegations in a well-pleaded complaint as true at this stage, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008); *see also Uniloc USA Inc. v. LG Elecs. USA Inc.*, 379 F. Supp. 3d 974, 986-87 (N.D. Cal. 2019) (finding § 101 issues properly addressed in Rule 12 motion to dismiss where "[p]laintiffs' second amended complaint features nothing but conclusions by, for instance, calling the '049 Patent 'novel and inventive.'").

For the same reason, the patent's specification—explaining shortcomings of prior authentication systems and alleging that the non-conventional arrangement of the claimed invention solves these problems—does not raise an issue of fact. In *Cisco Sys. v. Uniloc USA, Inc.*, 386 F. Supp. 3d 1185, 1192 (N.D. Cal. 2019), this Court rejected a nearly identical argument, and it does so again here.

Finally, plaintiff's claim construction argument also fails. Although the Federal Circuit has stated "that it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter[,]" it has also stated that "claim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp*

*Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012). In any event, looking to the proposed terms and proposed construction in plaintiff's brief (*see* Dkt. No. 25 at 10 (Opposition)), the Court finds that construction of these terms would not aid or alter the Court's determination today regarding the subject matter eligibility of the '213 patent.[2]

The Court finds that in the circumstances of this case it is appropriate to resolve the question of patent eligibility under § 101 on a Rule 12(b)(6) motion to dismiss.

## II.     Step 1: Abstraction

The Supreme Court has not articulated a definitive rule to determine what constitutes an "abstract idea" sufficient to satisfy the first step of the *Mayo/Alice* inquiry. Rather, both the Federal Circuit and the Supreme Court have compared the claims at issue to claims already found to be directed to an abstract idea in previous cases. *Alice*, 527 U.S.. at 221 ("[The Court] need not labor to delimit the precise contours of the 'abstract ideas' category in this case. It is enough to recognize that there is no meaningful distinction between the concept of risk hedging in *Bilski* and the concept of intermediated settlement at issue here.")*; see also Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327, 1334-1335 (Fed. Cir. May 12, 2016). Fundamental economic and conventional business practices are often found to be abstract ideas, even if performed on a computer. *See*, *e.g.*, *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015). Furthermore, a new application or computer-implemented function that simply utilizes a computer generally as a tool to conduct a known or obvious process will likely be considered abstract, whereas an application or computer-implemented function that improves the capability of the system, will overcome or avoid abstraction. *Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001, 1005 (Fed. Cir. 2017).

For the action at bar, there are several cases directly on point to guide the analysis of the '213 patent's eligibility under § 101. First, in *Asghari-Kamrani v. United Servs. Auto. Ass'n*, No.

---

[2] For purposes of the motion to dismiss, defendant accepted plaintiff's proposed claim constructions as correct. Dkt. No. 26 at 18 (Reply Brief). Defendant points out, and the Court agrees, that plaintiff's claim constructions do not transform claim 11 into patentable subject matter. *Id.*

9

2:15cv478, 2016 U.S. Dist. LEXIS 87065, at *3 (E.D. Va. July 5, 2016), affirmed by the Federal circuit,[3] the district court found a patent invalid where the patent was generally described as an "invention relat[ing] to a system and method provided by a Central-Entity for centralized identification and authentication of users and their transactions to increase security in e-commerce." The '213 patent—described by plaintiff as generally relating to "methods and systems for multi-factor authentication of users over multiple communications mediums"—is very similar. Compl. ¶ 9. The representative claim in the *Asghari* case stated:

> A method for authenticating a user during an electronic transaction between the user and an external-entity, the method comprising:
>
> receiving electronically a request for a dynamic code for the user by a computer associated with a central-entity during the transaction between the user and the external-entity;
>
> generating by the central-entity during the transaction a dynamic code for the user in response to the request, wherein the dynamic code is valid for a predefined time and becomes invalid after being used;
>
> providing by the computer associated with the central-entity said generated dynamic code to the user during the transaction;
>
> receiving electronically by the central-entity a request for authenticating the user from a computer associated with the external-entity based on a user-specific information and the dynamic code as a digital identity included in the request which said dynamic code was received by the user during the transaction and was provided to the external-entity by the user during the transaction; and
>
> authenticating by the central-entity the user and providing a result of the authenticating to the external-entity during the transaction if the digital identity is valid.

*Id*. at 5-6. With respect to the first *Alice* step, the court in *Asghari* ultimately concluded

> [a]ll of the claims in the '432 patent require the use of a computer. … However, despite the electronic setting and purportedly Internet specific problem addressed, the patent claims are directed to a common method for solving an old problem. The claims are directed to the abstract idea of using a third party and a random, time-sensitive code to confirm the identity of a participant to a transaction. This formulation is admittedly verbose. It is verbose because the patent claims combine two abstract ideas: ***the use of a third party intermediary to confirm the identity of a participant to a transaction and the use of a temporary code to confirm the identity of a participant to a transaction***. It is an obvious combination,ncd nothing about the combination removes the patent claims from the realm of the abstract.

*Id*. at 11 (emphasis added). The *Asghari* court's reasoning is relevant to the case at bar. The '213

---

[3] The procedural history of this case is summarized at 737 Fed.Appx. 539 (2018).

10

patent is highly similar to the abstract ideas emphasized in the quote above. The *Asghari* court distinguished the patent there from patents that were not found to be abstract because the other patents "were directed to an improvement in computer technology." *Id*. at 14. Here, there is no evidence that the '213 patent improves computer technology by making it faster, cheaper, or more efficient.

The second case particularly on point is *Strikeforce Techs., Inc. v. SecureAuth Corp.*, No. LA CV17-04314 JAK (SKx), 2017 U.S. Dist. LEXIS 222516, at \*4 (C.D. Cal. Dec. 1, 2017), *aff'd*, 753 F. App'x 914 (Fed. Cir. 2019). In that case, the patents in dispute were directed

> to multichannel security systems and methods for authenticating a user seeking to gain access to a secure network. Such networks include those used for online banking, social networking and business activities. This field of technology is related to "out-of-band" authentication, or "two-factor" or "multi-factor" authentication.

*Id*. (citations omitted). Again, this case involved highly similar subject matter to the '213 patent. The plaintiff in *Strikeforce* made the same argument Smart Authentication makes here: that the patent in question addressed a technology-specific problem by providing a technology-specific solution. Dkt. No. 25 at 9 (Opposition) ("Thus, claim 11 provides a solution that is necessarily rooted in computer technology to overcome a problem specific to electronic communications."); *Strikeforce Techs., Inc.*, 2017 U.S. Dist. LEXIS 222516, at \*9 ("Plaintiff argues that the Asserted Claims address a technology-specific problem by providing a technology-specific solution."). This Court reaches the same conclusion as the court in *Strikeforce:* plaintiff has simply applied "familiar processes in the context of the use of computers that are connected to the internet." *Strikeforce Techs., Inc.*, 2017 U.S. Dist. LEXIS 222516, at \*17. The '213 patent, like those in both *Asghari* and *Strikeforce*, is abstract.

The third analogous case is *Prism Technologies LLC v. T-Mobile USA, Inc.*, 696 Fed. Appx. 1014 (Fed. Cir. 2017). Generally, the patent there related to "systems and methods [controlling] access to protected computer resources by authenticating identity data, i.e., unique identifying information of computer components." *Id*. at 1016. The Federal Circuit found Prism's patent abstract, and because it was directed to the abstract process of "(1) receiving identity data from a device with a request for access to resources; (2) confirming the authenticity of the identity data associated with that device; (3)

11

determining whether the device identified is authorized to access the resources requested; and (4) if authorized, permitting access to the requested resources." *Id.* at 117. While Smart Authentication's patent involves authentication using two electronic media, and Prism's used different servers, the underlying principle is the same.

The '213 patent lacks specificity and amounts to generalized steps using generic computer functionality. The patent describes a functional system and method that is not special in its composition or unique in terms of its result. There are no technical details; rather, the '213 patent offers a "myriad of software implementation choices" and a "wide variety" of communication channels to implement claim 11. Dkt. No. 25-2 at 16 ('213 Patent). The patent does not state how it should be implemented. To the contrary, the '213 patent's specification states:

> [T]he ASP can be implemented in an almost limitless number of different ways, using different control structures, data structures, hardware and software platforms, modular organizations, protocols, and any of various other myriad software implementation choices and parameters …. ASPs may run on single server computers, on multi-processor systems, or on distributed computer systems. Multiple, geographically dispersed ASPs may be employed to efficiently handle ASP-client-transaction requests received through any of a wide variety of different types of communications media.

*Id.* Thus, the '213 patent recites a method for authenticating a user in more than one way over multiple electronic mediums but does not provide any "unconventional, patentable combination," such that straightforward steps to be done on a computer are transformed into something non-abstract. *California Inst. of Tech. v. Hughes Commc'ns, Inc.*, 59 F. Supp. 3d at 980.

Because the '213 patent is directed to the abstract idea of verifying the identify of a user in more than one way over multiple communications mediums, the Court must proceed to Step 2 of the *Alice* inquiry.

### III. Step 2: Inventive Concept

At step two of the *Alice* framework, the court considers the elements of each claim and asks, "what else is there in the claims before us?" *Alice*, 573 U.S. at 217. The Supreme Court describes this process as searching for an "'inventive concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent

upon the [ineligible concept] itself.'" *Id*. at 217-18. For an abstract idea involving a computer to be patent-eligible, "the claim ha[s] to supply a 'new and useful' application of the idea." *Id*. at 222 (*quoting Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)); *see also Diamond v. Diehr*, 450 U.S. 175, 177 (1981) (validating a claim employing a mathematical equation used in a larger process designed to solve a technological problem in the molding of rubber products). An inventive concept occurs when the claims are "more than a drafting effort designed to monopolize the [abstract idea]" and "claims may be read to 'improve[ ] an existing technological process.'" *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 221-23). The court's task at step two "is to 'determine whether the claims do significantly more than simply describe [the] abstract method' and thus transform the abstract idea into patentable subject matter." *Affinity Labs of Tex. v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (citation omitted).

In its briefing and during the August 9, 2019 hearing, plaintiff argued its inventive concept is "the arrangement of the claimed combination in order to have multiple devices and multiple communications media in order to reliably authenticate remote users of electronic transactions." Dkt. No. 25 at 16 (Opposition); August 9, 2019 Trial Transcript 15:8-13. Thus, the purported inventive concept simply restates the abstract idea the patent is directed to: verifying the identify of a user in more than one way over multiple communications media. What is needed to pass muster at step two of *Alice* is something "significantly more" than a description of the abstract idea itself, as the Federal Circuit explained in *Affinity Labs*. 838 F.3d at 1262. That case involved a patent with two independent claims "directed to streaming regional broadcast signals to cellular telephones located outside the region served by the regional broadcaster." *Id*. at 1255. After finding the claims were directed to an abstract idea at step one, the court went on to find no inventive concept at step two. The court explained, "The claim simply recites the use of generic features of cellular telephones, such as a storage medium and a graphical user interface, as well as routine functions, such as transmitting and receiving signals, to implement the underlying idea." *Id*. at 1262. Using well-known computer technology to authenticate a user – even using multiple electronic media to do so – amounts to functional use of familiar technology and is not inventive.

Plaintiff makes three overarching arguments with respect to the '213 patent's inventiveness: (1) plaintiff argues that defendant's "'generic computer functionality' test" fails because the '213 patent's specific combination of multiple user devices and communications media allegedly "transforms" the claim into a patent eligible application; (2) the '213 patent is inventive because it addresses the problem of "eavesdropping in communications networks"; and (3) claim 1, upon which claim 11 depends, "recites significant structural elements" that, according to plaintiff, amount to an inventive concept. Dkt. No. 25 at 16-18 (Opposition). The Court disagrees.

First, the combination articulated in the patent is not transformative – especially because it can be applied in a "limitless number of different ways." Dkt. No. 25-2 at 16 ('213 Patent). Second, while the '213 patent very well may address a problem unaddressed by prior art, that alone does not make the patent inventive. *See Market Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, No. 14 C 4957, 2015 U.S. Dist. LEXIS 75916, *23-25 (citing *Parker v. Flook*, 437 U.S. at 595 n.18 ("When evaluating inventiveness, '[t]he mere fact that a patent asserts that it represents an improvement on prior art does not, of course, suffice. And 'improvement,' standing alone, is not in any event the *sine qua non* of patentability … improvements must be the product of an inventive concept.'")).

Third, plaintiff's structural elements argument fails – indeed, it is made half heartedly by simply listing/quoting various portions of claim 1 and 11 without stating why or how these structural elements amount to an inventive concept. Dkt. No. 25-2 at 16-17 ('213 Patent). All the structural elements listed (computer systems, interface routines, user devices, etc.) were well-known and common place at the time the patent issued, and none provides a meaningful limitation. *Alice*, 527 U.S. at 226 ("As a result, none of the hardware recited by the system claims offers a meaningful limitation beyond generally linking the use of the method to a particular technological environment, that is, implementation via computers.") (internal quotation omitted). Plaintiff argues that the structural elements "even if determined to be 'conventional,' provide an ordered combination that is significantly more technical than" defendant argues. Dkt. No. 25 at 17 (Opposition). Again, this does not establish inventiveness, which seeks uniqueness and transformation, of which there is none here.

Plaintiff submitted *Cellspin Soft Inc. v. Fitbit, Inc.*, No. 2018-1817 (Fed. Cir. June 25, 2019) as supplemental authority, in support of its inventiveness argument. In *Cellspin*, the Federal Circuit affirmed the district court's finding of the patent's abstraction, but reversed the district court on step 2, finding the patent at issue was in fact inventive. However, *Cellspin* does not advance plaintiff's case in the action at bar. In that case, Cellspin argued its patent was inventive because it contemplated a less bulky and less expensive apparatus in terms of hardware – making it cheaper to build – and was also less expensive for the user. *Cellspin Soft Inc. v. Fitbit, Inc.*, No. 2018-1817 (Fed. Cir. June 25, 2019) at 18. *Cellspin* is also distinguished from the facts at bar because the ordered combination of elements was found to be inventive due to the combination fundamentally improving functionality. Smart Authentication has made no such showing here.

The Court finds no inventive concept such that the '213 patent, despite being directed to an abstract idea, is transformed into patentable subject matter. Accordingly, the Court concludes that claim 11 of the '213 patent is invalid under § 101.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS EA's motion to dismiss with prejudice.

**IT IS SO ORDERED**.

Dated: September 11, 2019

SUSAN ILLSTON
United States District Judge